FILED
COURT OF APPEALS
DIVISION II

2013 JUL 23 AM 9: 14

STATE OF WASHINGTON
BY_____
                DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42798-2-II |
| Respondent, | |
| v. | |
| ERIC CAMPOS-ORTIZ, | UNPUBLISHED OPINION |
| Appellant. | |

PENOYAR, J. — Eric Campos-Ortiz appeals his unlawful possession of a controlled substance conviction. He argues that the trial court erred by excluding one of his statements as "self-serving hearsay." Because the trial court did not rule on whether this statement was hearsay, there is no ruling for us to review. Campos-Ortiz alleges further errors in his statement of additional grounds (SAG), but none of these issues require reversal. We affirm.

## FACTS

Police arrested Campos-Ortiz on July 8, 2011, for trespassing at the Tacoma Center Motel. An officer searched him incident to arrest and discovered three small white rocks—later determined to be cocaine—in his pants' pocket. The State charged Campos-Ortiz with unlawful possession of a controlled substance (cocaine) on July 11, 2011.

At the suppression hearing, the motel manager, who was present at Campos-Ortiz's arrest, testified that he heard Campos-Ortiz tell the police that the pants he was wearing were not his. Based on this statement, defense counsel informed the trial court that he was going to file a supplemental jury instruction for unwitting possession. The prosecutor stated that he was not going to offer the manager's testimony that he heard Campos-Ortiz say the pants were not his because it was "self-serving hearsay." Report of Proceedings (Oct. 12, 13, 14, 2011) at 59. The

trial court then said, "Well, if one of your witnesses opens the door it's fair game." RP (Oct. 12, 13, 14, 2011) at 59.

At trial, the motel manager testified for the State and was cross-examined by Campos-Ortiz. Campos-Ortiz did not ask the manager whether the manager heard him say the pants were not his. Campos-Ortiz later testified in his own defense and stated that the pants were not his.

At the close of the evidence, Campos-Ortiz proposed a missing witness jury instruction because the State failed to re-call the manager to testify that he had heard Campos-Ortiz tell the police that the pants were not his. The trial court asked why Campos-Ortiz had not elicited that information from the manager on cross-examination, and Campos-Ortiz said that he could not have done so because the trial court had excluded that information as hearsay. The trial court declined to give the missing witness instruction.

The jury convicted Campos-Ortiz of unlawful possession. The trial court sentenced him to three months of confinement. Campos-Ortiz appeals.

## ANALYSIS

### I. HEARSAY

Campos-Ortiz argues that the trial court erred by excluding as hearsay the motel manager's testimony that the manager heard Campos-Ortiz tell the police during his arrest that the pants he was wearing were not his. Because the trial court did not rule on this issue, there is nothing for us to review.

During pretrial proceedings, the prosecutor stated that he would not offer the motel manager's testimony because it was hearsay, and the court replied, "Well, if one of your witnesses opens the door it's fair game." RP (Oct. 12, 13, 14, 2011) at 59. At that point, the trial court did not engage in any hearsay analysis or rule that the statement was excluded. Moreover,

2

Campos-Ortiz did not give the trial court occasion to rule on the admissibility of the statement by asking the court for clarification or by attempting to ask the manager about the statement in cross-examination. The lack of a hearsay ruling is further evidenced by the trial court asking Campos-Ortiz why he failed to elicit the statement from the manager on cross-examination. The trial court made no ruling on this issue, and there is nothing for us to review.

II.  SAG

Campos-Ortiz first argues that the arresting officer failed to read him his *Miranda*[1] rights. When asked whether he read Campos-Ortiz his *Miranda* rights, the arresting officer said, "I don't recall. I'm assuming, yes. I generally do that after I place somebody into custody." RP (Oct. 12, 13, 14, 2011) at 148. Although the officer's answer was not equivocal, even if the officer had failed to read Campos-Ortiz his *Miranda* rights, this would not affect the trial's outcome because the State did not attempt to introduce any of Campos-Ortiz's post-arrest statements.

Campos-Ortiz next argues that one of the jurors lied when he said he did not see Campos-Ortiz in handcuffs. Although the trial court has a duty to dismiss unfit jurors, Campos-Ortiz fails to show that the trial court erred by not dismissing the juror under these circumstances. Furthermore, we will not review a trial court's credibility determinations.

Before the trial began, one of the jurors observed Campos-Ortiz in custody. The juror told the court that, while he did not specifically see handcuffs, he saw Campos-Ortiz, with his hands behind his back, walking with a corrections officer. He further stated that, based on his previous experiences as a juror, he knew—before seeing Campos-Ortiz being escorted by a corrections officer—that Campos-Ortiz was in custody because of the deputy's presence in the

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

3

courtroom. The juror said that he did not tell the other jurors what he saw and that it did not make any difference to him whether Campos-Ortiz was in custody because "[b]eing arrested is not a sign of guilt." RP (Oct. 12, 13, 14, 2011) at 22. Neither party objected to the juror continuing to serve. RP at 22.

Under RCW 2.36.110

> It shall be the duty of a judge to excuse from further jury service any juror, who in the opinion of the judge, has manifested unfitness as a juror by reason of bias, prejudice, indifference, inattention or any physical or mental defect or by reason of conduct or practices incompatible with proper and efficient jury service.

We review the trial court's decision to dismiss a juror to determine if its decision is manifestly unreasonable or based on untenable grounds or reasons. *State v. Grenning*, 142 Wn. App. 518, 540, 174 P.3d 706 (2008); *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003).

Here, the trial court did not err by allowing the juror to continue to serve. The juror already knew Campos-Ortiz was in custody before he actually saw Campos-Ortiz being led by the corrections officer. Further, he stated that it did not make any difference to him whether Campos-Ortiz was in custody. Although Campos-Ortiz contends that the juror was lying, this is a credibility determination, and we do not review a trial court's credibility determination. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

Campos-Ortiz next argues that he was not allowed to give his testimony because the prosecutor limited his answers to "yes" or "no." But Campos-Ortiz was allowed to testify fully during direct examination. His theory was unwitting possession, and he was able to testify during direct examination that the pants were not his and that he did not know there were drugs in the pockets.

4

Finally, Campos-Ortiz argues that his attorney should have offered the motel security footage from his arrest. Campos-Ortiz does not provide any citations to the record regarding this footage or allege why the footage should have been included as evidence. Because he failed to inform us of the nature and occurrence of this alleged error, we do not address this issue. RAP 10.10(c).

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Penoyar, J.

We concur:

Worswick, C.J.

Bjorgen, J.